(47 Misc. Rep. 475.)

### CENTRAL TRUST CO. OF NEW YORK v. EGLESTON et al.

(Supreme Court, Special Term, New York County.   June, 1905.)

1. TRUSTS—CREATION BY WILL—CONSTRUCTION OF INSTRUMENT.

A will creating a trust for the benefit of testator's sons, and providing for the payment of a certain proportion of the income of the trust fund until each son should have arrived at the age of 30 years, "when I bequeath to them, after all deductions, 98 per cent. of the net income, the balance of 2 per cent. keeping the estate in heart and to be invested," contemplated that the sons should have 98 per cent. of the income from the time of their arrival at the age of 30 years; the word "when" being equivalent to "thereafter."  ·

2. PERPETUITIES—TRUSTS FOR ACCUMULATION.

Where a will creating a trust for the benefit of  testator's widow and children provided for the payment of a certain sum from the income of the estate to the widow, and another sum to each child annually until the sons should arrive at the age of 25 years, when they should have 75 per cent. of the income of the estate, after payment to the widow and deductions for charges, until they arrived at the age of 30 years, when they should have 98 per cent. of the net income, "the balance of 2 per cent. keeping the estate in heart and to be invested," the shares of the children were not joint, but distinct and separate, and the trust was therefore not repugnant to Personal Property Law, Laws 1897, p. 507, c. 417, § 2, prohibiting the suspension of the ownership of personal property for a longer period than two lives in being at the death of the testator, although the property was to be held in solido by the trustees, and there was no provision for a physical division into separate shares.

3. TRUSTS—PARTIAL INVALIDITY.

Under Personal Property Law, Laws 1897, p. 508, c. 417, § 4, subd. 2, providing that a direction for the accumulation of property for a longer term than the minority of the beneficiaries has the same effect as if limited to such minority, and is void as respects the time beyond minority, a trust providing for a distribution between the beneficiaries of a sum which in the aggregate amounts to less than the net income of the estate until the beneficiaries should arrive at the age of 30 years is void in so far as it directs an accumulation for a longer period than a minority, but will be sustained for a minority.

4. SAME—DISPOSITION OF ACCUMULATION.

Where a trust provides for an unlawful plan of accumulation of a certain portion of the rents and profits of the trust estate, the rents and profits subject to such plan of unlawful accumulation belong to the persons presumptively entitled to the next eventual estate.

Action for the construction of a will by the Central Trust Company of New York, as executors and trustee under the last will and testament of George Washington Egleston, deceased, against Amy Dorinda Egleston and others.   Judgment rendered.

Joline, Larkin & Rathbone (A. H. Van Brunt, of counsel), for plaintiff.

Lord, Day & Lord (L. H. Beers, of counsel), for defendant Amy Dorinda Egleston.

Albert Stickney, guardian ad litem, for infant defendant Egleston and others.

William H. Fain, for defendant C. L. Lawrence.

M. L. St. John, guardian at litem, for infant defendant Kitty L. Lawrence.

95 N.Y.S.—60

CLARK, J. The trustee brings suit for construction of a will. Testator left, him surviving, a widow and three infant sons, the children by his first wife. The estate consists entirely of personal property. It is clear, and conceded by all parties, that the trust for the benefit of the widow giving her an annuity of $4,000 a year, after a period allowed for the settlement of the estate, is a valid provision, and separable from the other provisions of the will. She is to receive the $4,000 a year either as income from the earnings of the corpus of the testamentary estate alone, in which case the legacy is to take the place of a marriage settlement—an endowment of £4,000—or, if she so elect, she may take the marriage settlement, and the difference in the revenue from such marriage settlement and $4,000 is to be made up from the earnings of the estate. It does not appear that any securities or funds were set aside under the marriage settlement. No election is possible. Under these circumstances, the £4,000 being a part of the estate, the income of $4,000 is to be paid out of the total earnings produced by the whole estate. The $3,000 deposited with Central Trust Company was a separate gift, and is no part of the decedent's estate, nor was it connected in any way with the marriage contract; it being intended as ready money for the widow's use in the event of testator's death. As the children are minors, the annuity to the wife is to be $2,000 for the first year, and one-half after testator's death, and after that $4,000. The three sons are each given $2,000 a year during the settlement of the estate, making the total family income $8,000. The testator expresses the desire (and it is merely a desire) that there be such contribution during the settlement that the wife, as the head of the family, may have the same income for the family needs as testator himself provided. He says:

"I desire that the Central Trust Company advance to my wife in the ratio of my previous expenditure from five thousand dollars to about nine thousand dollars, so as to give time to adjust family affairs. This is to be for the benefit of my wife and sons, not one, but all."

Reading the will as a whole, it is obviously the intention of the testator to provide for his wife and three sons during their lives, and, further, to keep the property in the family. In the fifth paragraph he says:

"My brother, William C. Egleston, having signified his intention of benefiting my sons in his will, I have thought it advisable to place all property in trust for my sons, so that it may pass on to my grandchildren. My most earnest desire is to perpetuate the name, which it is trusted may be for 'a good name,' in all generations. * * * In several instances, the property so carefully arranged by my father and mother has been left out of the line. No doubt had my father known it, every portion would have been only for life, and no portion given to them."

The provision contingent upon the death of wife and sons was to certain relatives, "to be used by them for life, and still deeded on to their children." After providing for the payment of income to the widow and sons, the testator makes no disposition of the principal. This is not so extraordinary as would at first appear, for, under the construction which I put upon the will, the trust created keeps the property in the family during the life of the wife and sons, and "so that it may pass on to his grandchildren." The construction of the

trust is not without difficulty, but, having in mind the guiding principle that the will is so to be construed as to effectuate the intent of the testator, I am of opinion that the will creates valid trusts for the payment of the income of the estate to the three sons for life, subject to the annuity for the benefit of the widow. There is an attempt to create a trust for the accumulation of income, in violation of section 4 of the Personal Property Law, Laws 1897, p. 508, c. 417, hereinafter discussed, but although the complete enjoyment of the income was improperly postponed, these very provisions show that it was testator's intention that the sons were to enjoy the income for life. The testator commences at the time of his death, and provides:

"I give and bequeath to my sons [naming them] * * * during settlement; the sum of two thousand dollars each. * * * After that I give to each of my sons an income of three thousand dollars per year. * * * At the age of twenty-five years (25), when each child shall reach that age, * * * I donate and give to the three sons seventy-five per cent. of the income of the estate, after payments to my wife and deductions for charges * * * until each child has arrived at the age of thirty years of age (30), when I bequeath to them, after all deductions, ninety-eight per cent. (98%) of the net income—the balance of two per cent. keeping the estate in heart and to be invested."

As the three sons were not of the same age, he makes special provision for additional income to the older two, while the youngest is reaching the age of 25 years, "when all shall have, as usual, till they come to thirty years of age," when he makes the same provision till the youngest arrives at 30 years, "when they share alike." The testator advises his sons to choose professions and to avoid mercantile pursuits; there being no cause for them to risk a reasonable competence for the uncertainties of business. It is true that, having read the will to find the intent, and having determined the intent, it may not be carried out unless the testator by suitable language disposed of his property in accordance with his expressed intention. But I am of opinion that the language used is sufficient to give a life interest in the income. The words "I give and bequeath to my sons during" a period, and "after that" an increased amount, followed by another period, commencing "at" a certain age, "when" larger amounts of the income are donated, "until" a last stage is reached, "when" the whole of the income is bequeathed, can only mean that the income is to continue to be paid; the final "when" being equivalent to "thereafter."

It is contended on behalf of the widow that the trust is invalid in that it provides for the suspension of the absolute ownership of the personal property for a longer period than two lives in being at the death of the testator. Pers. Prop. Law, § 2. This contention is based upon the fact that the will does not specifically make division of the residuary estate to establish separate trusts, and that it provides:

"At the age of twenty-five years (25), when each child shall reach that age, not before, or when the three children are twenty-five or the youngest twenty-five years old—I donate and give to the three sons, Thomas, Harold, and Vivian seventy-five per cent. of the income of the estate after payments to my wife and deductions for charges."

And further gives "Thomas and Harold five hundred dollars each extra from the time they arrive at 25 years old till Vivian arrives at

the same," and the same additional sum "till Vivian arrives at thirty years."

If the attempted disposition of the estate must be construed as one trust, the will is undoubtedly invalid, and the testator died intestate, with the exception of the valid provision for the widow. Where a suspension is to continue until the youngest of the members of a designated class numbering more than two reach a certain age, the scheme is invalid, as the two older members may predecease the youngest before he attains that age, and the suspension may, therefore, be for more than two lives in being. Hawley v. James, 16 Wend. 61; Greenland v. Waddell, 116 N. Y. 234, 244, 22 N. E. 367, 15 Am. St. Rep. 400. The provisions cited, however, refer merely to the period of accumulation. They do not show an intention that the respective interests of the beneficiaries in the undivided estate shall be joint, but are intended to indicate when their separate shares shall be applied in increased quantity after previous accumulation. Where from the entire will it is clear that the intention is expressed that the respective interests of the beneficiaries in an undivided estate shall be distinct and separate, the trust will be paid, even though the creator of the trust conveys the property to be held in solido by the trustees. Stevenson v. Lesley, 70 N. Y. 512; Shipman v. Rollins, 98 N. Y. 311, 314, 330. This rule is applied to trusts of personal, as well as of real, property. Knox v. Jones, 47 N. Y. 389; Matter of Lapham's Will, 37 Hun, 15. "In these cases," as stated by Finch, J., in Vanderpoel v. Loew, 112 N. Y. 167, 177, 19 N. E. 481, "the pivotal question is the inquiry whether the intention was to create one term of suspension, enveloping all the interests, and holding them in its grasp throughout the entire period, or whether the intention was to constitute distinct and separate interests, each to be measured by its own term, and having its own separate course to pursue. The answer to this question must of course depend on the particular provisions of each instrument, but the court is 'in duty bound' to reject a construction which will render the limitations too remote, and result in a failure of the trust, if any fair and reasonable interpretation of the language enables it to save the dispositions, and give effect to the will of the creator of the estate." Chapl. Susp. Alien. § 178. There need be no direction, express or implied, for a physical division of the property into separate shares, but if the beneficial interests of the beneficiaries are distinct from one another, that is sufficient to constitute the trusts several. Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481; Everitt v. Everitt, 29 N. Y. 39, 82. The testator, in my opinion, expressed his intention to create three separate trusts—one for the benefit of each son to one-third of the income. "Each" is to have $2,000 during settlement. "After that, I give to each of my sons an income of three thousand dollars." They are to "share alike." These phrases show an intention to make a general division of the income among them, each having his separate share, and this is more particularly expressed in the direction that "any sums of this amount not drawn to go to their credit at the trust company separately." The corpus of the estate is undoubtedly to be kept intact, but this does not affect the rule as stated, it being held that the property may remain in solido for the purpose

of convenient and advantageous management. Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481; Schermerhorn v. Cotting, 131 N. Y. 48, 29 N. E. 980. But even if the trust instrument does not indicate the purpose of the testator to separate the interests of the beneficiaries, the will admitting of a twofold construction, that construction must be given which will uphold the will. Mason v. Jones, 2 Barb. 229, 242; Cromwell v. Cromwell, 2 Edw. Ch. 495. In Harrison v. Harrison, 36 N. Y. 543, the court says:

"Effect should be given to the whole instrument, and to every part of it, if it can be done without violating the rules of law. And it is very apparent that effect cannot be given to this will, and to the manifest intent of the testator, except upon the theory of the separability of the shares of the six children of the testator in the estate held in trust for them."

So, also, Matter of Verplanck, 91 N. Y. 439; Hillyer v. Vandewater, 121 N. Y. 681, 24 N. E. 999. Moreover, as stated in the case last cited, where the beneficiaries took remainders following the trust estate, and which vested in interest at the death of testator, and were by statute tenants in common of the remainders, "of course, the trust must be deemed to correspond to the interests in the remainders, and becomes divisible into a separate trust for each; for while it (the trust) is the mould which holds in its clasp the beneficial interests, it takes the exact shape which those interests assume, and fits like a mould to every characteristic of the case. The death of either one would vest her share in her heirs or next of kin." In that case the remainders were disposed of by will, and by 1 Rev. St. p. 727, § 44, the beneficiaries took such remainders as tenants in common. In this case the principal of the estate is undisposed of, and it passes under the statute of distributions to the widow and next of kin of testator, vesting presently in interest, but the possession of which is postponed until the termination of the trusts. These remainders vest in the next of kin as tenants in common (using the phrase by analogy), and the trusts under which the income is to be applied are therefore separate. The intended accumulation in favor of the sons is void in so far as it directs such accumulation for a longer period than a minority, but it will be sustained as valid for such minority. The will provides for a payment of $3,000 to each son, subject to a contribution for maintenance of the home. When the youngest of the three sons reaches the age of 25 years, they are to divide 75 per cent. of the income of the estate, after payments to the widow and deductions for charges; the balance of 25 per cent. of the net income being held and invested until each child reaches the age of 30 years of age, when he bequeaths to them, after all deductions, 98 per cent. of the net income, the balance of 2 per cent. keeping the estate in heart and to be invested. As part of this plan of accumulation, the testator provides for $500 additional to be given to each of the elder sons while they are waiting for the youngest to reach the age of 25 and 30, when the greater portion of the income is to be applied. "My son Vivian Hector Maclean to attain the age of twenty-five and thirty years before the divisions;" that is, before the divisions of the greater proportions of the income to be applied under the plan for accumulation. This plan was, in effect, that, subject to the annuity for the widow, all the income should be

accumulated save· the $2,000 for the first year and one-half of the minority of the sons, all except $3,000 up to 25 years of age of the youngest son, of all over 75 per cent. of the total income up to 30 years of age, and thereafter the whole income, less 2 per cent., to keep the estate "in heart" or intact. "But so as to make some provision for my sons Thomas and Harold, waiting for them to reach the ages of 'twenty-five' and 'thirty years,' an additional sum is given them on reaching such ages." This plan of accumulation is clearly bad under our statute, which provides that the accumulation must be "for the benefit of one or more minors * * * in being at such [testator's] death, and to terminate at or before the expiration of their minority." The beneficiaries are minors in being at testator's death, but the accumulation directed is void in so far as it directs accumulation for a longer period than minority of each beneficiary. But the trust for accumulation is valid during the minority of each son. Subdivision 2 of section 4 of the Personal Property Law provides:

"A direction for any such accumulation for a longer term than the minority of the persons intended to be benefited thereby, has the same effect as if limited to the minority of such persons, and is void as respects the time beyond such minority."

In view of the construction that the trusts are separate, the sons taking several interests, and each having a beneficial interest in one-third of the total income, subject to the annuity to the widow for life, the accumulation is for the benefit of each minor. It is unlawful· in that it postpones enjoyment of part of the income after minority, namely, until the twenty-fifth and thirtieth years; but it is lawful in so far as it directs accumulation up to minority, and has the same effect as if limited to the minority merely. Each son, therefore, takes one-third of the total income, subject to the annuity, upon his reaching majority. The directions for the specific advances to the older sons at 25 and 30 years, and the reservation of the 2 per cent., "keeping the estate in heart and to be invested," all had reference to and were a part of the invalid scheme for the accumulation beyond minority, and fall with the directions postponing full participation at, and thereby directing accumulations beyond, minority.

The principal or corpus of the estate not having been disposed of, the same vests in interest under the statute of distributions. The remainders so vested are, however, subject to the beneficial estate for the lives· held in trust. Under the Revised Statutes (1 Rev. St. p. 730, § 63), applicable alike to real and personal property, "no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest." The act was subsequently amended so as to permit a release to himself of all his right, title, and interest in and to the income of such trust estate, and providing that thereupon the estate of the trustee should proportionately cease. But by chapter 88, p. 239, of the Laws of 1903, which took effect March 25, 1903, the right to release even in a beneficiary of the complete equitable estate was withdrawn, and section 83 of the Real Property Law, Laws 1896, p. 572, c. 547, so amended as to re-establish the law as it was under section 63, p. 730, of the Revised Statutes. Metcalfe v. Union Trust Co., 181 N. Y. 39, 73 N. E. 498; Cook v. Straiton,

41 Misc. Rep. 206, 83 N. Y. Supp. 964, affirmed 96 App. Div. 625, 89 N. Y. Supp. 1102. As the testator died January 24, 1904, his will took effect after the amendment of 1903, and section 63 is controlling.

The guardian ad litem contends that the infants are entitled to the entire principal and reserved income upon reaching majority. In the first place, each son does not take a remainder of one-third of the entire principal. As one-third part of the corpus of the estate passes to the widow under the statute of distributions, each son takes only one-third of two-thirds of the corpus. Moreover, under the authorities last cited, he may not now acquire even such share until the termination of the trust estate. Neither is the contention supported by section 53, p. 568, of the Real Property Law (1 Rev. St. p. 726, § 40). It is there provided:

"When, in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation or of the ownership, during the continuance of which, the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

The guardian cites Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Matter of Crossman, 113 N. Y. 503, 21 N. E. 180; Hetzel v. Barber, 69 N. Y. 12; Lovett v. Gillender, 35 N. Y. 617; Gilman v. Reddington, 24 N. Y. 9—in which the statute was applied. In all the cases cited the income or a part of it was not disposed of. In this case, although an attempt was made to unlawfully accumulate the income and postpone its enjoyment in possession, nevertheless all the income was disposed of. In the cases cited the limitation was of an expectant estate. In this case the remainders are vested. I therefore conclude that three valid trusts were created by the will, neither one of which limits the power of alienation for more than two lives in being.

The trust company takes the corpus of the estate, which may remain in solido until the termination of any one of the three trusts, when such portion of the property as is released from the trust obligation may be separated; the remainder of the estate kept together until the last remaining trust has been executed. The income from the entire property is to be divided into three equal shares. The trustee is to pay from these incomes the annuity to the widow first from the incomes derived from the property, being $2,000 for the first year, and one-half after testator's decease, and thereafter $4,000 a year during her life. The balance of the income is to be accumulated in three separate funds. From such income the trustee is to pay $2,000 to each son, less £100 to be equally contributed, one-third of such £100 to be taken from each $2,000, as a charge thereon, and paid over by the trustee, as a legacy, to the widow during the period of one year and one-half from testator's death, "to maintain the home." Thereafter, and until each son attains majority, the trustee is to pay to each son from his separate share of the income accumulated $3,000 per year for education and expenses, £200 to be paid to the widow; the same being made up in the same way as the £100, and for the same purpose. If such contribution of £200 is not made from the shares of the sons, they are each to receive only $2,000, but relieved of any contribution. Any part of the income during this period not drawn out by a son is

to go to his credit, being added to his separate fund by the trustee. As each son attains majority, the entire income of one-third of the property is to be paid to him during his life, together with the accumulation made for his benefit during minority. All payments of income to the sons are subordinate to the annuity in favor of the widow, which is a first charge upon each of their separate beneficial interests in equal amounts. The widow takes a vested interest in remainder in one-third of the principal. Each of the sons takes a vested interest in remainder in two-ninths of the principal.

Judgment accordingly.